**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARSEN KASHKASHIAN** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 14-105** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **UNDERWRITERS, INC.** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                            **July 10, 2014**

Plaintiff, an attorney, has filed suit against his malpractice insurance carrier, seeking a declaration that the insurer is required to defend and indemnify him in connection with a lawsuit filed against Plaintiff by a former client (the "underlying action"). Defendant removed the action to this Court and has filed a motion to dismiss, arguing that the insurance policy excludes coverage for the underlying action.

**I.       Standard of Review**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[1] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[2] Courts are not, however, bound to accept as true legal conclusions couched

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[2] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

as factual allegations.[3]  Something more than a mere *possibility* of a claim must be alleged; a

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[4]  The

complaint must set forth "direct or inferential allegations respecting all the material elements

necessary to sustain recovery under *some* viable legal theory."[5]  In deciding "a motion to

dismiss, courts generally consider only the allegations contained in the complaint, exhibits

attached to the complaint and matters of public record."[6]

## II.    Discussion

Plaintiff purchased an insurance policy from Defendant, which provided coverage for

claims made against Plaintiff within the policy period of August 1, 2012, to August 1, 2013, with

certain limitations and exclusions.[7]  The claim against which Plaintiff seeks to be defended and

indemnified is one of alleged legal malpractice and fraud, arising out of an investment dispute

between Plaintiff and his former client, Michael Riley.  Riley alleges that Plaintiff took $125,000

from Riley's bank account for a business venture, instead of an apparently agreed upon

$100,000.[8]  After Plaintiff allegedly refused to return any of Riley's investment, Riley filed a

claim for compensation with the Pennsylvania Lawyers Fund for Client Security ("the Fund").

The Fund notified Plaintiff by letter dated June 22, 2012, that the claim had been denied.[9]  In

---

[3] *Twombly*, 550 U.S. at 555, 564.

[4] *Id.* at 570.

[5] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[6] *PBGC. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  All of the documents cited herein were attached to the Complaint.

[7] Compl. Ex. A (Policy).

[8] Compl. Ex. B at 2 (*Riley v. Kashkashian* Complaint).

[9] Compl. Ex. E.  The Complaint does not allege whether Plaintiff was made aware of Riley's claim to the Fund before it was denied.

August of 2012, Riley commenced the underlying action by filing a writ of summons in the Court of Common Pleas of Philadelphia County and, on May 16, 2013, filed a complaint.[10]  By letter dated May 20, 2013, Plaintiff notified Defendant of the filing of the complaint in the underlying action.[11]  Defendant denied coverage and refused to defend or indemnify Plaintiff.[12]  This lawsuit followed.

There is no dispute that Pennsylvania contract and insurance law apply in this case. Under Pennsylvania law, the interpretation of the terms of an insurance contract is for the Court,[13] which must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy."[14]  Courts must give effect to the clear language of an insurance contract; where the language is ambiguous, the ambiguity is construed against the insurer as the drafter of the contract.[15]  Although the insured party has the burden of establishing coverage under an insurance policy,[16] the insurer has the burden of establishing the applicability of any exclusions or limitations on coverage.[17]

The policy in this case is a claims-made policy, which "protects the insured only against claims first made during the life of the policy, regardless of when the event out of which the claim arose occurred; by contrast, an occurrence policy protects the insured from liability for any

---

[10] Compl. Ex. B.

[11] Compl. Ex. B.

[12] Compl. Ex. C.

[13] *Madison Constr. Co. v. Harleysville Mutual Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999).

[14] *401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005).

[15] *Id.*

[16] *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1366-67 (Pa. 1987)).

[17] *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996).

act or occurrence done while the policy is in effect regardless of when the claim is made."[18]  The policy covers "claims first made against [Plaintiff] during the policy period,"[19] and provides that "claims alleging, based upon, arising out of or attributable to the same or related wrongful acts shall be treated as a single claim . . . ."[20]  The policy defines a "claim" as "a demand received by you for money or services, including the service of suit or institution of arbitration proceedings against you, or a disciplinary proceeding,"[21] and defines a "disciplinary proceeding" as "a proceeding in which a complaint alleging a wrongful act, a violation of any disciplinary rule or other professional conduct is brought before a tribunal of competent jurisdiction."[22]  The policy also provides that:

> This policy does not apply to any claim arising out of a wrongful act occurring prior to the policy period if, prior to the effective date of the first … [p]olicy issued by us to the named insured . . . b. **you had a reasonable basis** to believe that you had breached a professional duty, committed a wrongful act, violated a disciplinary rule, engaged in professional misconduct or **to foresee that a claim would be made against you**. . . .[23]

Defendant argues that it is not required to defend or indemnify in the underlying action because the first claim against Plaintiff relating to the events that form the basis for the underlying action was made before the policy's coverage period began and because Plaintiff could have foreseen the filing of the underlying action before the policy's effective date.

---

[18] *Universal Health Servs., Inc. v. Pa. Prop. & Cas. Ins. Guaranty Ass'n*, 884 A.2d 889, 891 n.1 (Pa. Super. Ct. 2005).

[19] Compl. Ex. A, Policy at 1.

[20] Compl. Ex. A, Policy at 7.

[21] Compl. Ex. A, Policy at 2.

[22] Compl. Ex. A, Policy at 2.

[23] Compl. Ex. A, Policy at 5 (emphasis added).

A.      *When was a claim first made against Plaintiff?*

It is undisputed that Plaintiff knew that Riley had requested compensation from the Fund no later than June 22, 2012, when the Fund notified him that it had denied the claim.  Defendant argues that therefore Plaintiff knew that a "claim," as that term is used in the policy, was made against him before the effective policy date of August 1, 2012.  Plaintiff argues that Riley's demand to the Fund did not constitute a "claim"— that it was not a disciplinary proceeding, that no money was sought by Riley from Plaintiff himself, and that in any event the Fund rejected Riley's request for compensation.

The Court concludes that as a matter of law, Riley's submission to the Fund constituted a claim as defined in the policy.  The Fund operates pursuant to the Pennsylvania Rules of Disciplinary Enforcement.[24]  The Fund's Board evaluates the claim,[25] may request additional information,[26] and decides for or against the claimant.[27]  By filing with the Fund, Riley therefore commenced "a proceeding in which a complaint alleging a wrongful act [i.e., a misuse of client funds], a violation of any disciplinary rule or other professional misconduct is brought before a tribunal of competent jurisdiction."  That the Fund rejected Riley's claim for compensation is irrelevant for purposes of determining coverage under the policy.  For purposes of this case, the claim was made at the latest on June 22, 2012 (when Plaintiff acknowledges receiving notice that the claim was rejected).  Because the policy excludes coverage when "the earliest claim arising

---

[24]  Pa. R. Disciplinary Enforcement 501-531.

[25]  Pa. Fund Lawyer's Client Sec. Reg. 3.1(a).

[26]  *Id.* at 3.2(b)

[27]  *Id.*

5

out of such wrongful acts was first made"[28] before the effective date of policy (August 1, 2012), and the proceeding before the Fund arose out of the same allegedly wrongful acts as the underlying action, coverage is excluded under the terms of the policy.[29]

> B.    *Should Plaintiff reasonably have foreseen the filing of the underlying action?*

In order to establish that it was reasonably foreseeable that the underlying action would be filed, two factors must be met:  "First, it must be shown that the insured knew of certain facts. Second . . . it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty."[30]  The Third Circuit applies the same standard to determine whether the insured "could have reasonably foreseen that [his] prior conduct might be the basis of a claim."[31]  There is no dispute that Plaintiff was aware before the policy took effect that Riley had a grievance against him and had gone so far as to demand compensation from the Fund, an entity established "to reimburse clients who have suffered a loss as a result of a misappropriation of funds by their Pennsylvania attorney."  Although Plaintiff argues that he is an experienced attorney who could not have foreseen the filing of the lawsuit, and that the Fund had vindicated him by rejecting Riley's claim, the Court agrees with Defendant's position that as a matter of law under the circumstances of this case, "a reasonable attorney could foresee that an individual who initiates a disciplinary proceeding against him based on the alleged breach of several professional duties may later

---

[28] Compl. Ex. A, Policy at 2.

[29] Plaintiff's argument that there was no "demand received by [him] for money or services" in connection with the Fund proceeding would read out of the policy the specific inclusion of a disciplinary proceeding in the definition of a claim and run afoul of the requirement that courts "must adopt any reasonable reading that gives effect to each provision of the policy."  *Mut. Ben. Ins. Co. v. Politopoulos*, 75 A.2d 528, 536 (Pa. Super. Ct. 2013), *appeal granted in part by Mutual Ben. Ins. Co. v. Politopoulos*,  No. 943 MAL 2013, 2014 WL 2815747 (Pa. June 20, 2014).

[30] *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 (3d Cir. 1998).

[31] *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 306 (3d Cir. 2001).

pursue a malpractice suit."[32]  An attorney "cannot assume that the claim will not be brought because he *subjectively* believes it is time barred or lacks merit."[33]  Therefore, this exclusion also bars coverage.

### III.    Conclusion

Because Defendant has no duty to defend or indemnify Plaintiff in the underlying action, the motion to dismiss will be granted.  An order will be entered.

---

[32] *Fishman v. The Hartford*, 980 F. Supp. 2d 672, 679 (E.D. Pa. 2013).

[33] *Coregis*, 264 F.3d at 307.